<u>Case No. 22-2119</u>

UNITED STATES COURT OF APPEALS
<u>FOR THE SIXTH CIRCUIT</u>

ROBERT PARKER; PAUL ADAMS

Plaintiffs-Appellees

v

BATTLE CREEK PIZZA, INC.; KEVIN HERSHOCK; DOE CORPORATIONS 1-10;
JOHN DOES, 1-10

Defendants-Appellants

Appeal from the United States District Court
Western District of Michigan
<u>Case No. 1:20-cv-00277</u>

**DEFENDANTS-APPELLANTS' REPLY BRIEF ON APPEAL**

**CERTIFICATE OF COMPLIANCE/CERTIFICATE OF SERVICE**

JEFFREY C. GERISH
PATRICK C. LANNEN
Attorneys for Defendants-Appellants
38505 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 901-4031
jgerish@plunkettcooney.com
plannen@plunkettcooney.com

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

RELIANCE ON STATEMENTS ...................................................................... 1

SUMMARY OF ARGUMENT ......................................................................... 1

THE DISTRICT COURT ERRED IN HOLDING THAT FEDERAL MINIMUM WAGE LAW PROHIBITS EMPLOYERS FROM REIMBURSING EMPLOYEES' VEHICLE EXPENSES BY REIMBURSING THE REASONABLY APPROXIMATE AMOUNTS EMPLOYEES EXPENDED, AND REQUIRES EMPLOYERS EITHER TO REIMBURSE ACTUAL COSTS OR PAY THE IRS STANDARD BUSINESS RATE ........................................................... 3

I.    FLSA regulations unambiguously allow employers to reimburse employee vehicle expenses by paying reimbursements that are reasonably approximate to amounts expended by employees. .................... 3

A.    Section 778.217 addresses "Reimbursement for expenses" and should not be ignored in an attempt to create an ambiguity in the regulatory scheme as Plaintiffs would have the Court do. ....................................................................... 4

B.    Plaintiffs' argument that expense reimbursement should be treated differently for minimum wage purposes than for overtime purposes is directly contrary to congressional intent. .................................................................................. 11

II.   Deference to the Department of Labor's interpretation is unwarranted, but, if applied, confirms employers may reasonably approximate the expense incurred. ......................................................... 12

A.    Deference to the DOL's interpretation is unwarranted. .................... 12

B.    The Handbook does not fill the gap supposedly left by § 531.35 read in isolation and does not warrant deference. .............. 19

C.    The DOL's 2020 Letter warrants deference if deference is owed. ........................................................................................ 24

CONCLUSION ........................................................................................... 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Beck v. City of Cleveland, Ohio*,
  390 F.3d 912 (6th Cir. 2004) ................................................................ 15

*Belt v. EmCare, Inc.*,
  444 F.3d 403 (5th Cir. 2006) ......................................................... 21, 22

*Bradford v. Team Pizza, Inc.*,
  No. 1:20-cv-00060, 2021 WL 2142531, at *11 (S.D. Ohio
  May 26, 2021) ...................................................................................... 19

*Da Silva v. Att'y Gen. United States*,
  948 F.3d 629 (3d Cir. 2020) ................................................................ 15

*Davis v. Abington Mem'l Hosp.*,
  765 F.3d 236 (3d Cir. 2014) ................................................................... 8

*Diamond v. Chakrabarty*,
  447 U.S. 303 (1980) ............................................................................. 15

*Donovan v. Public Serv. Co. of N.M.*,
  607 F. Supp. 784 (D.N.M. 1984) ......................................................... 22

*Ergon-W. Virginia, Inc. v. Dynegy Mktg. & Trade*,
  706 F.3d 419 (5th Cir. 2013) ............................................................... 14

*Ex parte Trinity Prop. Consultants, LLC*,
  308 So. 3d 36 (Ala. 2019) .................................................................... 15

*Fast v. Applebee's International, Inc.*,
  638 F.3d 872 (8th Cir. 2011) ......................................................... 21, 22

*Holland v Comm'r*,
  622 F.2d 95 (4th Cir. 1980) ................................................................. 10

*Kennedy v. Mountainside Pizza, Inc.*,
  No. 19-CV-01199-CMA-STV, 2020 WL 5076756 (D. Colo.
  Aug. 26, 2020) ..................................................................................... 19

*Kisor v. Wilkie*,
  139 S. Ct. 2400 (2019) ......................................................13, 18, 21, 22, 23

*Klinedinst v. Swift Investments, Inc.*,
  260 F.3d 1251 (11th Cir. 2001) ........................................................... 21

*Marsh v. J. Alexander's LLC,*
    905 F.3d 610 (9th Cir. 2018) ................................................................ 21, 22

*Matias-Rossello v. Epoch LLC,*
    2022 WL 993601 (D.P.R. Apr. 1, 2022) ........................................................ 19

*Monahan v. County of Chesterfield,*
    95 F.3d 1263 (4th Cir. 1996) ............................................................... 7, 8

*MSPA Claims 1, LLC v. Tenet Florida, Inc.,*
    918 F.3d 1312 (11th Cir. 2019) ................................................................ 6

*Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.,*
     989 F.3d 556 (7th Cir. 2021) ................................................................ 14

*Rafferty v. Denny's, Inc.,*
    13 F.4th 1166 (11th Cir. 2021) ................................................... 15, 16, 17

*Rodriguez v. GC Pizza, LLC,*
    No. 4:20-CV-3106, 2022 WL 4368353 (D. Neb., Sept 21,
    2022) ....................................................................................... 19

*Rubalcaba v. Garland,*
    998 F.3d 1031 (9th Cir. 2021) ................................................................ 13

*Schaefer v. Walker Bros. Enters.,*
    829 F.3d 551 (7th Cir. 2016) ............................................................. 21, 22

*Skidmore v. Swift,*
    323 U.S. 134 (1944) ....................................................................... 23, 26

*Stein v. HHGREGG, Inc.,*
    873 F.3d 523 (6th Cir. 2017) ................................................................ 23

*Sullivan v. PJ United, Inc.,*
    No. 7:13-CV-01275-LSC, 2017 WL 10575860 (N.D. Ala.
    Oct. 16, 2017) ............................................................................. 19

*Sullivan v. Stroop,*
    496 U.S. 478 (1990) ......................................................................... 10

*United States v. Riccardi,*
    989 F.3d 476 (6th Cir. 2021) ................................................................ 13

*Vergos v. Gregg's Enterprises, Inc.,*
    159 F.3d 989 (6th Cir. 1998) ................................................................ 12

*W.W. McDonald Land Co. v. EQT Prod. Co.*,
   983 F. Supp. 2d 790 (S.D.W. Va. 2013), opinion clarified
   (Jan. 21, 2014) ......................................................................................... 14

*Walsh v. KDE Equine, LLC*,
   56 F.4th 409 (6th Cir. 2022) .................................................................... 21

*Wass v. NPC Int'l, Inc.*,
   688 F. Supp. 2d 1282 (D. Kan. 2010) ....................................................... 19

*Weddington v. United Nat. Ins. Co.*,
   346 F. App'x 224 (9th Cir. 2009) .............................................................. 14

**Statutes and Regulations**

29 C.F.R. § 531.27 ........................................................................................ 12

29 C.F.R. § 531.32(c) ....................................................... 1, 3, 5, 7, 8, 9, 10, 11, 24

29 C.F.R. § 531.35 ................................................... 1, 3, 4, 5, 7, 9, 10, 11, 19, 24, 25

29 C.F.R. § 778.217 ............................................... 1, 3, 4, 5, 7, 9, 10, 11, 13, 24, 25

29 U.S.C. § 206 ......................................................................................... 3, 11

29 U.S.C. § 207 ......................................................................................... 3, 11

29 U.S.C. § 207(e)(2) .................................................................................... 12

29 U.S.C. § 207(h)(1) .................................................................................... 12

**Miscellaneous**

Black's Law Dictionary 1518 (11th ed. 2019) ............................................... 15

## RELIANCE ON STATEMENTS

Defendants-Appellants ("Defendants") rely on their Statement Regarding Oral Argument, Statement of Subject Matter and Appellate Jurisdiction, Statement of Question Presented, and Statement of the Case, none of which is seriously contested in Plaintiffs' Brief.

## SUMMARY OF ARGUMENT

Plaintiffs identify no language in any statute or regulation that suggests employers are prohibited from reimbursing employee drivers' travel expenses through reimbursements that reasonably approximate the expense incurred. Plaintiffs' claim that the minimum wage laws prohibit that benign practice is based on a refusal to give the pertinent regulations their most natural reading. They concede that 29 C.F.R. § 531.35 is not comprehensive, yet urge the Court to ignore language in a regulation to which the reader is explicitly referred in § 531.35, namely § 531.32(c) and its reference to § 778.217 "[f]or a discussion of reimbursement for expenses such as 'separate money,' 'travel expenses,' etc." Consideration of that language and the sections cited would, according to Plaintiffs, "require [] over-reading a chain of regulatory cross-references." (Plaintiffs' Brief, p. 26). In fact, a proper understanding of the regulations merely requires a *reading* of the plain, unambiguous language of 531.35 and the two referenced sections, one of which, 778.217, is specifically entitled

"Reimbursement for expenses" and answers the question Plaintiffs claim is not answered in any regulation—because they dislike the answer.

Plaintiffs strain to suggest an ambiguity in the regulatory scheme in order to convince the Court to defer to what they claim is an agency interpretation. They even argue that the regulatory language allowing employers to reasonably approximate vehicle expenses is itself ambiguous. But there is nothing remotely ambiguous about the standard.

Were there any question about whether the plain language of the regulations answers the question whether employers are permitted to reasonably approximate driver expenses, it was answered by the DOL itself in the Letter it issued in 2020 on that specific point. Plaintiffs ask the Court to ignore that letter as well, because it does not provide the answer they were hoping to see. Plaintiffs instead urge the Court to look to the Field Operations Handbook issued to investigators and staff. But the language of the Handbook on which Plaintiffs rely sheds no light whatever on what employers are permitted to do. The language of the Handbook says only that *DOL staff* is permitted to use the IRS rate to "determine and evaluate" an employer's practices. Nothing in the language of the Handbook directs employers to do anything. Quite to the contrary, the language of the Handbook plainly permits employers to reasonably approximate drivers' expenses; it merely provides a

safe harbor that ensures employers will be in compliance by using the IRS rate. Furthermore, the Handbook is not entitled to deference for other reasons. To the extent the Court finds the regulations genuinely ambiguous, deference should be to the 2020 DOL Letter that actually addressed the issue at hand.

The many judicial decisions recognizing that employers are entitled to reasonably approximate driver expenses are correct. The district court's contrary ruling is incorrect, and this Court should reverse.

## ARGUMENT

### THE DISTRICT COURT ERRED IN HOLDING THAT FEDERAL MINIMUM WAGE LAW PROHIBITS EMPLOYERS FROM REIMBURSING EMPLOYEES' VEHICLE EXPENSES BY REIMBURSING THE REASONABLY APPROXIMATE AMOUNTS EMPLOYEES EXPENDED, AND REQUIRES EMPLOYERS EITHER TO REIMBURSE ACTUAL COSTS OR PAY THE IRS STANDARD BUSINESS RATE

## I.  FLSA regulations unambiguously allow employers to reimburse employee vehicle expenses by paying reimbursements that are reasonably approximate to amounts expended by employees.

The parties agree that, while the FLSA establishes minimum and overtime wages in 29 U.S.C. §§ 206, 207, regulations were enacted to fill in gaps left by those two statutes. Three regulations, 29 C.F.R. §§ 531.35, 531.32(c), and 778.217, address the issue of employees that provide tools of

3

the trade used for performance of the employer's work for which the employer provides reimbursement.  Plaintiffs acknowledge the relevance of § 531.35, the "anti-kickback rule," which prohibits employers from requiring employees to incur costs to provide tools of the trade that employers do not reimburse.  That anti-kickback rule does not address either the issue of facilities provided by the employer for the employee's benefit or the manner in which expenses incurred by an employee for furnishing tools of the trade may be reimbursed.  Those two issues are addressed in § 531.32(c), which is specifically referenced in § 531.35, and in § 778.217, which is specifically referenced in § 531.32(c).  Plaintiffs urge the Court simply to ignore those two sections and the explicit references to them.  But that invitation should be rejected for a host of reasons.

**A.    Section 778.217 addresses "Reimbursement for expenses" and should not be ignored in an attempt to create an ambiguity in the regulatory scheme as Plaintiffs would have the Court do.**

Plaintiffs concede that § 531.35 "is not comprehensive," (Plaintiffs' Brief, p. 2) and "does not explain how an employer should calculate" travel expenses incurred by employees who use their own vehicles.  (*Id.*, p. 6).  Plaintiffs nevertheless urge the Court simply to ignore § 778.217—the regulation that does address that very issue.  Plaintiffs concede that § 531.35 explicitly

references § 531.32(c), which addresses facilities furnished primarily for the benefit of the employer and which explicitly references § 778.217, the section entitled "Reimbursement for expenses."  (Plaintiffs' Brief, p. 8).

Plaintiffs acknowledge the relevance of § 531.32(c), given the relatedness of facilities provided by the employer and tools of the trade provided by the employee.  (Plaintiffs' Brief, p. 8).  But they claim consideration of a *second* cross-reference, the section referenced in § 531.32(c), is a bridge too far; consideration of that second reference, according to Plaintiffs, requires "over-reading a chain of regulatory cross-references."  (Plaintiffs' Brief, p. 26).  See also *id.,* p. 27 (criticizing reliance on § 778.217 as "a daisy-chain of cross-references," and a "tenuous theory of incorporation . . . [that] requires adopting a strained and illogical relationship between the relevant sections"), *id.*, p. 30 (characterizing the two references as an "elaborate web of connections," and a "daisy chain of references").

It is Plaintiffs' insistence that the Court consider § 531.35 to be the only relevant section and ignore the two (as opposed to six or seven) explicit cross-references in the three regulations that is "strained and illogical."  Far from "over-reading" a "chain of cross-references" or an "elaborate web of connections," the many courts that have correctly recognized the plain reading of this series of *three* regulations have done nothing more than give

5

effect to the **two** cross-references explicitly included in them.

The only authority Plaintiffs could muster for their argument that a court should ignore a "chain" of two cross-references in a statutory or regulatory scheme is *MSPA Claims 1, LLC v. Tenet Florida, Inc.,* 918 F.3d 1312 (11th Cir. 2019).  Plaintiffs pluck a quote out of that decision, where the court said courts should not "dig through layers of cross-references and then use what they have unearthed to replace the text of the provision right in front of them."  (*Id.* at 1322).  But that decision does nothing to support Plaintiffs' theory.

The issue in *MSPA Claims 1* was whether a private cause of action was created in the Medicare statute for an entity in MSPA's shoes.  The language in the statute that created a private cause of action was clear that MSPA did not have one.  MSPA cited a cross-reference in the subsection creating a private cause of action, which in turn cited another subsection describing what the Secretary was authorized to do (make particular conditional payments).  The provision in the statute that created the private cause of action did so for damages "in the case of a primary plan which fails to provide for primary payment . . . *in accordance with* paragraphs . . . (2)(a)," and it was subsection (2)(a) that referenced (2)(B) that gave the Secretary authorization to make certain payment.  MSPA sought to bootstrap the right identified in the cross-

referenced section to expand the type of private cause of action that could be brought—in direct defiance of the limitation in the subsection creating the private cause of action.  The court correctly rejected the attempt to use a cross-referenced section addressing a completely different point "to replace the text of the provision right in front of them."  *Id.* at 1322.

Here, nothing in § 778.217 replaces a contradictory provision in § 531.35.  Section 531.35 does not address the manner in which an employer is to reimburse employee expenses, as Plaintiffs concede.  Section 778.217 fills that gap.  And § 778.217 is explicitly referenced in the very subsection to which § 531.35 refers the reader, § 531.32(c).  These cross-references thus work together; they are not inconsistent, and none is being cited to contradict language from either of the other two.

Plaintiffs also argue that because section 778.217 is in the overtime part of the regulations, it cannot be referenced in sections addressing minimum-wage requirements.  As support for that bizarre argument they cite a decision noting that regulations found in the overtime part are not "applicable when there is no overtime compensation at issue."  (Plaintiffs' Brief, p. 31, citing *Monahan v. County of Chesterfield,* 95 F.3d 1263, 1280 (4th Cir. 1996)).  But *Monahan* does not prevent the DOL from *explicitly referencing* a provision within the overtime part in the part addressing payment of wages, thus

rendering that referenced section plainly applicable.

Plaintiffs also take *Monahan* out of context. The quoted portion comes from a section of the opinion where the court addressed a claim dealing with neither overtime nor minimum wage violations. The plaintiff was instead asserting a "pure gap time" claim, which refers to a situation in which an employee has not worked any overtime hours and is paid more than minimum wage, though possibly less than the amount called for under the employee's employment agreement. Pure-gap claims are essentially an effort by a plaintiff to transform a breach-of-contract claim into an FLSA violation. See *Monahan*, 95 F.3d at 1280-1281. Not surprisingly, the vast majority of federal courts to have encountered such claims have held that they are not cognizable under the FLSA. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014) ("Courts widely agree that there is no cause of action under the FLSA for 'pure' gap time wages").

It was in that context—where there was not even an alleged FLSA violation—that the court said Part 778 is not "applicable when there is no overtime compensation at issue." *Monahan*, 95 F.3d at 1280. The court did not address a situation like here, where there is an alleged FLSA violation, and indeed, where the minimum-wage regulations themselves cross-reference the overtime regulations. See 531.32(c). The regulations instruct that one should

consult the overtime regulations in part 778 to properly apply the minimum-wage regulations in Part 531.  Moreover, and as discussed further below, the rules in Part 531 and the rules in Part 778 "set[] forth consistent and complementary standards" for calculating both minimum-wage and overtime-wage obligations under the FLSA.  The court in *Monahan* stated only that FLSA regulations (there, the overtime regulations) do not apply outside of the FLSA.  Noting in *Monahan* or in any other decision requires a court to ignore a cross-reference in a regulation merely because the cross-referenced regulation is found in another part of the regulatory scheme.  And nothing prohibited the DOL from referring to a regulation from another part for the applicable rules on "[r]eimbursement for expenses."

Plaintiffs' position also requires the Court to ignore or misread the very language of the relevant regulations.  They acknowledge the relevance of subsection 531.32(c)—as they must, given its explicit reference in § 531.35.  They note that that subsection deals with the issue of "employer-furnished items," which "can be included in a workers' wage."  (Plaintiffs' Brief, p. 24).  They find it significant that subsection 531.32(c) "says nothing" about how an employer can calculate costs for employee expenses.  (*Id.*).  That is significant to Plaintiffs only because they ignore the explicit reference to § 778.217, the section that does address, and is entitled, "[r]eimbursement for expenses."

9

Plaintiffs also find it significant that "section 531.35 doesn't cross-reference section 778.217 at all." (Plaintiffs' Brief, p. 26). But § 531.32(c), which is explicitly referenced in § 531.35, does reference § 778.217. It would make no sense for the DOL to refer redundantly in § 531.35 to both sections 531.32(c) and 778.217 when the former explicitly references the latter. The DOL's reference in section 531.35 to subsection 531.32(c) with its own reference to section 778.217 "[f]or a discussion of reimbursement for expenses such as 'supper money,' 'travel expenses, ' etc." was a much more sensible and efficient way to bring together all three sections that bear on the issues they respectively address. *See Sullivan v. Stroop,* 496 U.S. 478, 484 (1990) (explaining that cross-references imply that regulations should "operate together closely"); *Holland v Comm'r,* 622 F.2d 95, 97 (4th Cir. 1980) (noting cross-references "avoid[] unnecessary restatement of the same language in a succession of statutes").

Plaintiffs also argue that the sole purpose of the reference to § 778.217 is "to flag a nuance in the treatment of meals." (Plaintiffs' Brief, p. 29). As support they cite the fact that the reference to section 778.217 in subsection 531.32(c) specifically refers to discussion of reimbursement for expenses including "supper money." (*Id.*). But the flaw in that argument is immediately apparent: the reference to § 778.217 in subsection 531.32(c) states in its

entirety, "For a discussion of reimbursement for expenses **such as** 'supper money,' '**travel expenses**,' **etc**., see § 778.217 of this chapter." (emphasis added). If, as Plaintiffs submit, the sole purpose of the reference to § 778.217 was "to flag a nuance in the treatment of meals," the reference would have been so limited and would not have included the specific example of "travel expenses," the phrase "such as," or the term "etc."

### B. Plaintiffs' argument that expense reimbursement should be treated differently for minimum wage purposes than for overtime purposes is directly contrary to congressional intent.

Plaintiffs concede, as they must, that § 778.217 allows employers to reasonably approximate travel expenses incurred by employees for purposes of determining the regular rate for overtime. In urging the Court to ignore the reference to § 778.217 in subsection 531.32(c), Plaintiffs would have this Court hold that expense reimbursement by employers should be done differently for purposes of overtime and minimum wage determinations. Plaintiffs so argue despite acknowledging the interrelatedness between minimum wage and overtime wage calculations required by 29 U.S.C. §§ 206 and 207. (See Plaintiffs' Brief, p. 4). Indeed, Plaintiffs even acknowledge that the anti-kickback regulation, § 531.35, applies to both minimum and overtime wages. (Plaintiffs' Brief, p. 5).

Plaintiffs' argument that one rule should apply for determining how reimbursements are calculated for overtime wages and a different rule for the minimum wage is directly contrary to the *express* intention of congress and the DOL that wages be calculated consistently across both contexts. See 29 U.S.C. §§ 207(e)(2), (h)(1); and 29 C.F.R. § 531.27. In the face of the settled rule that courts should not render interpretations that "lead to internal consistencies," *Vergos v. Gregg's Enterprises, Inc.,* 159 F.3d 989, 990 (6th Cir. 1998), Plaintiffs urge the Court to *require* inconsistency in this area in direct defiance of congressional intent.

Rather than impose such an unworkable inconsistency in how employers should reimburse travel expenses, the Court should simply read the regulations based on their plain wording and recognize that travel expenses should be reimbursed the same way in both contexts: employers are permitted to reimburse the reasonably approximate amounts incurred by employees.

## II. Deference to the Department of Labor's interpretation is unwarranted, but, if applied, confirms employers may reasonably approximate the expense incurred.

### A. Deference to the DOL's interpretation is unwarranted.

There is no ambiguity, much less a "genuine ambiguity," in the regulatory scheme on the issue of how employers may reimburse travel

expenses.  *Kisor v. Wilkie,* 139 S. Ct. 2400 (2019).  Plaintiffs endeavor to create ambiguity by having the Court simply ignore one of the two cross-references in the relevant regulations.  For the reasons set forth above, the Court should not ignore the explicit cross-reference to § 778.217 in order to find an ambiguity, much less a "genuine ambiguity" of the type required by *Kisor.*

Plaintiffs also argue that the "reasonably approximate" standard is itself genuinely ambiguous.  But that phrase is not ambiguous at all, especially when used in the context of approximating vehicle expenses.  Much less is the phrase *genuinely* ambiguous on the level required by *Kisor.*  As courts, including this one, have stressed, "*Kisor* must awake us 'from our slumber of reflexive deference' to" agencies.  *United States v. Riccardi*, 989 F.3d 476, 485 (6th Cir. 2021); *see also id.*at 484–85 (*Kisor* "clarified *Auer*'s narrow scope" and "cautioned that a court should not reflexively defer to an agency's interpretation").  "*Kisor* requires [courts] to 'dig deeper' in determining whether a regulation is genuinely ambiguous."  *Rubalcaba v. Garland*, 998 F.3d 1031, 1040 (9th Cir. 2021).

Plaintiffs make no attempt to "dig deeper" in determining whether the phrase "reasonably approximate" as applied to vehicle expenses is genuinely ambiguous.  They also fail to recognize that the context—vehicle expenses— removes any ambiguity (much less genuine ambiguity) in the interpretation of

that phrase.  There is nothing remotely ambiguous about the concept of reasonably approximating vehicle expenses.

Plaintiffs make no argument that the word "approximate" is ambiguous. They argue that the word "reasonably" is ambiguous, but in doing so they simply ignore Defendants' point that "reasonable" and "reasonably" is not ambiguous, i.e., susceptible of different *interpretations*, when the context makes it easy to ascertain the meaning of a phrase with that word—as in the phrase "reasonably approximate" vehicle expenses.  *See also Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co*., 989 F.3d 556, 571–72 (7th Cir. 2021) ("While 'reasonably' (or 'reasonably proportionate') encompasses a range of permissible values, it is nevertheless unambiguous ...."); *Ergon-W. Virginia, Inc. v. Dynegy Mktg. & Trade*, 706 F.3d 419, 425 (5th Cir. 2013) ("The word 'reasonable' is not ambiguous.  When it modifies other terms . . . it is used . . . to designate that specific time, value, [etc.] that 'would be thought satisfactory'") (citation omitted, cleaned up); *Weddington v. United Nat. Ins. Co*., 346 F. App'x 224, 226 (9th Cir. 2009) ("The term 'reasonably' indicates that an objective standard should apply.  The term 'reasonably' is not ambiguous."); *W.W. McDonald Land Co. v. EQT Prod. Co.*, 983 F. Supp. 2d 790, 808 (S.D.W. Va. 2013), opinion clarified (Jan. 21, 2014) ("The word 'reasonable' is a relative term with no fixed or rigid meaning; but it is not

ambiguous.") (citation omitted, cleaned up); *Ex parte Trinity Prop. Consultants, LLC*, 308 So. 3d 36, 41 (Ala. 2019) (as used in statute, "the phrase 'reasonable effort is not ambiguous. 'Reasonable' is defined, in part, as 'fair, proper, or moderate under the circumstances; sensible.' Black's Law Dictionary 1518 (11th ed. 2019).").

The mere fact that a phrase setting a standard, such as "reasonably approximate," is susceptible to different applications depending on the specific context does not make the phrase *ambiguous,* i.e., susceptible to more than one interpretation. Indeed, as Defendants noted in their opening brief, "[b]road general language is not necessarily ambiguous when congressional objectives require broad terms." *Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980); *see also Da Silva v. Att'y Gen. United States*, 948 F.3d 629, 636 (3d Cir. 2020) ("[A] term in a statute is not ambiguous merely because it is broad in scope."). Indeed, even as used in the FLSA, "the term 'reasonable' is intended to accommodate varying work practices based on the facts and circumstances of each case." *Beck v. City of Cleveland, Ohio*, 390 F.3d 912, 921 (6th Cir. 2004). Given the context of the "reasonable approximation" standard as applied to vehicle expenses, there is no ambiguity.

Plaintiffs cite *Rafferty v. Denny's, Inc.*, 13 F.4th 1166 (11th Cir. 2021), in response to Defendants' argument that the "reasonable approximation"

standard is, at most, permissibly vague rather than genuinely ambiguous.

While Defendant does not concede that the phrase "reasonably approximate"

is vague, even if it is, it is not *ambiguous.* Contrary to Plaintiffs' argument,

*Rafferty* does not stand for the proposition that every vague term is also

ambiguous—only that some terms may be so vague that they are also

ambiguous, which is not the case here.

    In *Rafferty*, the court interpreted the "dual jobs" regulation of the FLSA,

which provides that where an employee performs both tipped and non-tipped

occupations for the same employer, the employees' tips cannot be credited to

the employer's minimum-wage obligations for the non-tipped portion of the

employees' work. The regulation provides that a non-tipped occupation

occurs when an employee spends more than "part of her time" "occasionally"

performing work "unrelated" to the tipped occupation. *See id.* at 1180. The

regulation was ambiguous because it lacked guidance on where to "draw the

line between time that qualifies" as "part" or "occasionally," and time "that

does not." *Id.* The regulation also "set[] out no test, definition, or other

analytic tools to allow a court to ascertain what constitute 'related' duties and

what do not." *Id.* The court found that the terms "part of her time,"

"occasionally," and "related" were ambiguous, not just vague. But the court

never held that a vague regulation will always also be ambiguous. Rather, it

provided that in some instances a regulation may be ambiguous if it uses terms that remain "vague or imprecise on the exact question before the court, after the court has employed every tool of statutory construction to try to discern their meanings." *Id*. at 1182.

Applying *Rafferty* here, "reasonably approximate," even if vague, falls squarely on the permissible side of vagueness—especially given the context of approximating vehicle expenses. The regulations explain that "costs" of "tools of the trade" for delivery drivers may be calculated by "reasonably approximating" actual costs. Thus, in contrast with *Rafferty*, there is a "test" and an "analytical tool" to determine whether the costs are adequately calculated—the amount reimbursed must "reasonably approximate" the driver's actual costs. This is not a case where the regulation is so vague that its meaning cannot be ascertained. To hold otherwise would be to deny the Department the reasonable flexibility the Department wanted to accord employers in approximating costs.

*Rafferty* is also of questionable persuasive value. The court inaccurately concluded that "at least eight members of the Court [] clearly understood 'ambiguity' for the purposes of *Auer* deference to include regulations that are 'vague' after the court uses all the tools in the judicial toolbox to discern their meaning." As aptly explained by Judge Luck's concurring opinion, the concept

17

of vagueness arose in *Kisor* only to counter an argument that *Auer* deference encourages vagueness—"[v]agueness isn't mentioned in the genuine ambiguity part of *Kisor*, . . . because vagueness and ambiguity are different legal concepts." *Id.* at 1199 (Luck, J., concurring). Instead, as Judge Luck correctly noted, "[o]ver and over again, the Supreme Court explained that terms and phrases in a regulation are genuinely ambiguous where their 'meaning'—rather than their application—is unclear." *Id.* at 1197 (Luck, J., concurring). That is, "*Auer* deference is appropriate only 'if the meaning of the words used is in doubt'" *Id.* (Luck, J., concurring) (quoting *Kisor*, 139 S. Ct. at 2415 (2019)). This Court should apply the genuine ambiguity framework established in *Kisor*—looking to whether a term has uncertain "meaning"—rather than the erroneous interpretation thereof from a split opinion of the Eleventh Circuit.[1]

Plaintiffs' inability to support an argument that the phrase "reasonably approximate" is genuinely ambiguous as applied to vehicle expenses with any

---

[1] A more helpful case from within the Eleventh Circuit is *Debiasi v. Cardinal Pizza, LLC*, No. 5:22-CV-294 (MTT), 2023 WL 4055700, at *4 (M.D. Ga. June 16, 2023). The court there expressly declined to follow the district court's opinion in the instant case, thus joining the growing majority of courts that have recognized employers are permitted to reasonably approximate vehicle expenses.

persuasive authority is unsurprising—because the phrase is *not* genuinely ambiguous.  That is also why the majority of courts that have specifically addressed the issue have found no genuine ambiguity in that phrase.  *See, e.g., Rodriguez v. GC Pizza, LLC,* No. 4:20-CV-3106, 2022 WL 4368353 (D. Neb., Sept 21, 2022); *Matias-Rossello v. Epoch LLC*, 2022 WL 993601 (D.P.R. Apr. 1, 2022); *Bradford v. Team Pizza, Inc.*, No. 1:20-cv-00060, 2021 WL 2142531, at *11 (S.D. Ohio May 26, 2021); *Kennedy v. Mountainside Pizza, Inc.*, No. 19-CV-01199-CMA-STV, 2020 WL 5076756 (D. Colo. Aug. 26, 2020); *Sullivan v. PJ United, Inc.*, No. 7:13-CV-01275-LSC, 2017 WL 10575860 (N.D. Ala. Oct. 16, 2017); and *Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282 (D. Kan. 2010).

### B.  The Handbook does not fill the gap supposedly left by § 531.35 read in isolation and does not warrant deference.

Plaintiffs' argument requires not only that the Court ignore one of two cross-references in the pertinent regulations, it requires that the Court misinterpret the Field Operations Handbook that Plaintiffs claim fills the gap left by § 531.35 when read in isolation.  But the Handbook does no such thing.  Plaintiffs' argument that the Handbook "gave employers two options: they can either track a driver's actual expenses or use the standard business mileage rate the IRS uses" (Plaintiffs' Brief, p. 2), is simply incorrect.  Nor does the Handbook "inform [] employers how to calculate 'costs'", "instruct []

[employers] to use either actual costs or the IRS" rate, much less "explicitly give [] employers only two options to comply with section 531.45." (Plaintiffs' Brief, pp. 6, 7, 11, 43).

The language in the Handbook to which Plaintiffs refer is not even directed to what employers may or may not do. It is directed to what *DOL staff* can use "to determine or evaluate the employer's wage payment practices." Specifically, it provides a safe harbor that permits approval of an employer's practice if the practice is consistent with what the IRS proposes. Thus, for example, an employer that reasonably approximates employee's expenses would comply with the enforcement policy identified in the Handbook so long as that calculation was at what the IRS required. Nothing in the Handbook requires employers to use the IRS rate in lieu of actual costs, and nothing prohibits employers from making reasonable approximations; the Handbook simply identifies a safe harbor that requires no further analysis.

The DOL certainly knew how to direct provisions in the Handbook at employers' conduct rather than at staff to use when determining and evaluating employer conduct. Section 32d05, for example, states that "Payments reasonably approximating traveling or other expenses incurred by an employee in furtherance of his/her employer's interest, and properly reimbursed by the employer, may be excluded from the regular rate of pay.

However, if the amount paid is disproportionately large, the excess amount shall be included in the regular rate of pay for overtime purposes." That language is directed at what employers may and may not do, as opposed to section 30c15, which is directed at what staff may consider in determining or evaluating employee practices.

Plaintiffs contend that courts "routinely" recognize that the Handbook is authoritative, citing *Marsh v. J. Alexander's LLC*, 905 F.3d 610 (9th Cir. 2018); *Schaefer v. Walker Bros. Enters.,* 829 F.3d 551 (7th Cir. 2016); *Fast v. Applebee's International, Inc.*, 638 F.3d 872 (8th Cir. 2011); and *Belt v. EmCare, Inc.,* 444 F.3d 403 (5th Cir. 2006). But all those decisions were rendered prior to *Kisor*, which scaled back on the *Auer* deference discussed in those decisions. Nor did any of them involve the provision of the Handbook at issue here, which does not warrant *Kisor* deference even if other provisions of the Handbook do.

In fact, this Court and others have held that the Handbook "is not binding on this court," though it may, in certain instances, be persuasive. *Walsh v. KDE Equine, LLC*, 56 F.4th 409, 414 (6th Cir. 2022); *see also, e.g.*, *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001) (concluding the Handbook is "[a]n agency's internal directive" to its employees and so it is "without the force of law"); *Donovan v. Public Serv. Co.*

21

*of N.M.*, 607 F. Supp. 784, 786 (D.N.M. 1984) (citations omitted) (noting that provisions of the Handbook "are merely guidelines and do not carry the force of law").

In each case Plaintiffs cite to argue that the Handbook is "authoritative," the relevant Handbook provision was consistent with other pronouncements by the DOL, e.g., opinion letters, amicus briefs, or both, and also involved a more in-depth analysis than the Handbook provision on which Plaintiffs rely. In *Marsh,* for example, the provision in the Handbook (on dual jobs regulation) consisted of a multi-paragraph, in-depth analysis that was consistent with multiple DOL opinion letters and positions taken in amicus briefs. The consistency of the approach was crucial to the court's deference. *Marsh,* 905 F.3d at 632. Both *Fast* and *Schaefer* involved the same Handbook provision, on dual jobs regulation. *Belt* also involved a Handbook provision that was consistent with what the DOL also said in an opinion letter and an amicus brief. *Belt,* 444 F.3d at 415. Plaintiffs cite no decision applying *Kisor* deference to any part of the Handbook, let alone the provision they wish to have applied here.

Plaintiffs also argue that the Handbook clearly represents the DOL's "expertise" as well as its "fair and considered judgment." It does not. Providing its staff a safe harbor in considering and evaluating employers'

practices does not reflect much, if any, expertise or consideration, much less expertise or "fair and considered" judgment in interpreting a regulation.  It merely provides a convenient safe harbor that requires no additional undertaking by staff in evaluating or considering an employer's practices.

Finally, Plaintiffs argue that even if *Kisor* deference to the Handbook is not owed, the Court should show deference on the grounds that the Handbook is persuasive, pursuant to *Skidmore v. Swift*, 323 U.S. 134 (1944).  But the cursory, safe-harbor provision in the Handbook does not even present an analysis of any regulation, much less do so in a way that could be deemed persuasive.  Plaintiffs cite the deference shown by this Court to another provision in the Handbook in *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 532 (6th Cir. 2017).  But the Handbook provision at issue in *Stein* is more notable for how dramatically different it is from the provision at issue in this case.  The provision in *Stein* was a comprehensive analysis of the issue (whether employers could credit draws or guarantee payments against minimum wage obligations) that included "several examples to illustrate permissible draw-against-commission plans," one of which was "applicable in this case." *Id.*  The Handbook provision in this case is nothing like the provision at issue in *Stein.*

Ultimately, none of the bases for deferring to agency interpretations applies to the provision in the Handbook on which Plaintiffs place such heavy

reliance.  That is why the vast majority of decisions addressing the issue have

disagreed with Plaintiffs' argument and with the district court's decision in

this case.

## C.    The DOL's 2020 Letter warrants deference if deference is owed.

To the extent the Court believes there is a genuine ambiguity that

warrants deference to an agency interpretation, that deference should be

given to the DOL's 2020 Letter that actually addressed the issue, rather than

the Handbook provision that did not.  Plaintiffs' arguments to support the

district court's refusal to defer to the 2020 Letter fail at every turn.

Plaintiffs argue that the Letter does not provide a reasonable

interpretation of a regulation because it interpreted § 778.217 as filling in the

gap through the two cross-references in §§ 531.35 and 531.32(c).  (Plaintiffs'

Brief, pp 48-49).  Plaintiffs claim the interpretation should, therefore, be

ignored because it did not limit its analysis to § 531.35 and find an unfilled gap

like Plaintiffs do.  But that is nothing more than a self-interested disagreement

with the DOL's interpretation—and a baseless one at that, as it refuses to read

the two cross-references explicitly inserted in the regulations.  Similarly,

Plaintiffs complain that the Letter "fails to identify anything in the text of

section 778.217 to support its statement that that section provides guidance

on what payments are sufficient to meet the FLSA's minimum-wage requirements." (Plaintiffs' Brief, p 49).  But Plaintiffs simply ignore the explicit reference in subsection 531.32(c) to section 778.217 "[f]or a discussion of reimbursement for expenses, such as 'supper money,' 'travel expenses,' etc.," in the context of minimum wage regulations.

Plaintiffs' criticism of the Letter's interpretation because "the letter did not start with the text of section 531.35" (Plaintiffs' Brief, p 12) is baseless for two reasons.  First, it makes perfect sense that the Letter focused on section 778.217, since that is the section that addresses expense reimbursement, the subject of the Letter, whereas section 531.35 does not.  Plaintiff's criticism also ignores the fact that the Handbook provision does not "start with," end with, or even purport to address or interpret *any* text from *any* regulation. The same is true of their criticism of the Letter's reliance on section 778.217 and the two cross-references.  While criticizing the straightforward interpretive approach taken in the Letter, Plaintiffs turn a blind eye to the fact that the provision in the Handbook makes no pretense of interpreting any regulation.

Plaintiffs also criticize the Letter's recognition that a reasonable approximation approach makes sense because "precise calculations may not be practical, or even possible." (Plaintiffs' Brief, p 50).  Their only basis for

25

disagreeing with that conclusion is that requiring the IRS rate would be convenient. But the mere fact it might be convenient does not make it accurate or precise, and the Letter's conclusion that precise calculations may not be practical or even possible is quite clearly correct. If anything, it is an understatement. Plaintiffs have no answer to Defendants' point that a significant flaw in requiring use of the IRS rate is that it is a national rate that fails to take into account significant differences in different geographic regions, as well as that nature of vehicles typically used by pizza delivery drivers. (See Defendant's Brief, pp. 50-54). The Letter appropriately recognizes, at least implicitly, that reasonable approximations are likely to be at least as precise and accurate as using the IRS rate, if not much more so.

Plaintiffs also claim the 2020 Letter "appears to have been crafted to provide a 'convenient litigation position.'" (Plaintiffs' Brief, p 51). But they cite no authority or support for that statement, which is nothing more than speculation by Plaintiffs because they do not like the approach the Letter suggests.

The 2020 Letter, unlike the Handbook, represents the DOL's considered judgment on the actual issue at hand, based on an actual interpretation of the pertinent regulations and the DOL's expertise. The Letter also invokes *Skidmore* deference, unlike the Handbook, since it constitutes a reasonable,

persuasive interpretation of the actual language of the regulations.  To the extent the Court believes deference to an agency interpretation is warranted, deference should be to the 2020 Letter.

## CONCLUSION

For the reasons set forth herein and in their opening brief, Defendants request that this Court reverse the District Court's April 28, 2022, Opinion and Order and grant Defendants' request for partial summary judgment or remand with instructions for the District Court to do so.  Defendants further request any and all other relief to which they are entitled.

Respectfully submitted,

By    /s/Jeffrey C. Gerish
Jeffrey C. Gerish
Patrick C. Lannen
Attorneys for Defendants-Appellants
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
jgerish@plunkettcooney.com
plannen@plunkettcooney.com

Dated:  July 28, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

Jeffrey C. Gerish, being first duly sworn, certifies and states the following:

1.      He is an attorney with the firm Plunkett Cooney, and is in principal charge of the above-captioned cause for the purpose of preparing the attached reply brief on appeal;

2.      The reply brief on appeal prepared by his office complies with the type-volume limitation, using Cambria size 14 font; and

3.      The word processing system counts the number of words in the reply brief as 5,934.

/s/Jeffrey C. Gerish
Jeffrey C. Gerish

## CERTIFICATE OF SERVICE

Jeffrey C. Gerish, being first duly sworn, deposes and says that he is a Shareholder with the Firm of Plunkett Cooney and that on the 28th day of July, 2023, he caused a copy of this document to be served upon all parties of record, and that such service was made electronically upon each counsel of record so registered with the Sixth Circuit Court of Appeals and via U.S. Mail to any counsel not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid and depositing said envelope and its contents in a receptacle for the U.S. Mail.

/s/Jeffrey C. Gerish
Jeffrey C. Gerish (P51338)
PLUNKETT COONEY
Attorneys for Defendants-Appellants
38505 Woodward Ave., Suite 100
Bloomfield Hills, MI 48304
jgerish@plunkettcooney.com

Open.28076.01926.31453011-1